Glass' Estate.

Argued October 8, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Clyde Holt,* of *Holt, Holt & Richardson,* and *Lewis R. Glass,* for appellant, submitted a brief.

*Harold F. Reed,* with him *Reed, Smith, Shaw & McClay* and *Reed & Shaw,* for appellee.

Opinion by Baldrige, J., December 18, 1934:

This appeal was taken by Louis R. Glass, residuary legatee under the will of Jane B. Glass, deceased, from the order of the orphans' court confirming the adjudication of the account of Louis R. Glass, executor and trustee.

Jane B. Glass died on January 30, 1926, first having made her last will and testament. Her will was duly probated, and on April 27, 1926, an inventory and appraisement were filed. The executor paid all the debts which were presented to him and all the specific legacies provided for in the will, prior to the failure of the Bank of Pittsburgh N. A., but filed no account. On September 19, 1931, Louis R. Glass, as executor, drew out of the Bank of Pittsburgh the sum of $4,300

on a check payable to himself, residuary legatee, dated September 12, 1931. On September 21, 1931, the bank failed and a receiver was appointed. On October 17, 1931, an assessment was levied against the stockholders of the bank in the full amount of the par value of their stock, and one week later a notice of the assessment was received by Louis R. Glass, demanding payment of $1,050, with interest from October 17, 1931, on the 21 shares of stock standing in the name of Jane B. Glass. Glass refused to comply with this demand, and a citation was issued July 8, 1932, directing him to show cause why he should not file an account. An account was ordered to be filed, which was accordingly done on June 7, 1933. It shows that the accountant blended items of distribution to the specific legatees with the payments of administration expenses, inheritance taxes, debts of the decedent, and that he paid to himself, as residuary legatee, the balance of the estate, except 21 shares of stock of the Bank of Pittsburgh N. A., and $84.30 in bank. Exceptions were filed and an auditor was appointed. The auditor filed his report and restated the account. After allowing the costs of the audit, there remained for distribution to creditors and legatees, $20,192.35. The claim of the Bank of Pittsburgh N. A., with interest, totalling $1,189.65, was allowed. This report was duly confirmed by the court. Hence this appeal.

The Comptroller of Currency has the power to assess the shareholders of an insolvent bank, and the receiver has the authority to enforce the payment of such assessment: Miller v. Hamner, 269 F. 891, 894.

The appellant contends that as no suit at law was brought to recover this claim for at least six years after letters testamentary were granted, the major portion thereof is not a debt of the decedent; that the liability is confined to the remaining assets in the executor's hands, unadministered at the time of the

bank's failure. We do not question the contention of appellant that the statute of limitations may be set up in the orphans' court precisely as in a court at law; or that in proper cases it can be tolled by nothing short of a suit at law, or what is equivalent thereto in the orphans' court. That rule is expressly recognized in Yorks' Appeal, 110 Pa. 69, 1 A. 162, on which appellant mainly relies. There, however, letters testamentary were issued on August 29, 1877, the year the testator died, and an account was filed August 15, 1884. At the audit a note executed by the decedent on November 13, 1872, was presented for payment. It was held that the claim was barred by the statute of limitations.

In the case at bar, there is a very important feature which was not present in Yorks' Appeal, viz., the claim was not in existence at the death of the testatrix. There was a potential liability, but it did not accrue until the bank failed and an assessment was made by the Comptroller of the Currency on October 17, 1931. This claim could not have been enforced prior thereto; then the statute started to run. The action was begun, therefore, within six years from the time the debt was due. See Loughran's Est., 257 Pa. 534, 101 A. 817. Although the law favors a vigilant creditor and a speedy distribution of the assets of an estate, due regard must be had to meritorious claims, so long as laches or delay does not prejudice the interests of the estate. This is not a case where the creditor remained quiescent, or could be justly charged with unnecessary delay in prosecuting a stale claim. He proceeded as promptly as practicable.

In Robins' Est., 180 Pa. 630, 37 A. 121, the facts disclose that Robins died April 13, 1882. The will was probated six days later. Within three months the executor distributed $260,000 to the legatees, without taking refunding bonds, as provided by the Act of

452

February 24, 1834, P. L. 73, §47. An account was filed nine months after the testator's death, together with a schedule of the distribution made. The account was confirmed on April 10, 1883. Nine years after the filing of the account, the guardian, for whom decedent had given bond, absconded, and claim was made upon the estate of Robins, and a recovery was allowed. The court held that the statute of limitations did not constitute a bar to recovery.

Nor did the failure to give notice within six months after the granting of letters testamentary bar this claim. The Fiduciaries Act of June 7, 1917, §49b (20 PS §862), provides: "Executors or administrators may make distribution, and pay or deliver legacies, without the audit of their accounts, upon such security as may be satisfactory to them, nevertheless at their own risk, but without liability to any creditors of the decedent who shall not have given written notice to the executor or administrator within six months after the granting of letters testamentary or of administration, provided that such executor or administrator has complied with the provisions of section ten of this act. Where distribution of a decedent's estate is awarded by the orphans' court, after audit and confirmation of any account of the executors or administrators, such decree of distribution shall protect the executors or administrators from personal liability with respect to the property so distributed."

It will be observed that an executor may make a distribution without an auditing of his account, but if he does so, he should properly protect himself by taking refunding receipts. But the act obviously contemplates the filing of an account, and until that is done, there is no legal distribution.

We had the above section for our consideration in Ivison's Estate, 101 Pa. Superior Ct. 326, 329. The facts in the two cases are somewhat similar, as in each

case the fiduciary was a residuary legatee who made a distribution without the filing of an account, relying on a private settlement. President Judge TREXLER, speaking for the court in the Ivison case, said: "It will be noticed that Section 49b allows executors and administrators to make distribution without the auditing of their *accounts,* without liability to creditors who have not given written notice within six months. It implies that necessarily an account is filed. It would hardly be a correct construction of this section to hold that when an accountant files his account a creditor even though he has given no notice, may not, before distribution, demand payment. The account, according to the section, must precede the distribution. It does not contemplate that the administratrix, as in this case, should take possession of the estate and use it as her own before any account is filed.

" . . . . . . There is no doubt that proper compliance with the law on the part of a creditor requires him to present his claim within six months, but if he presents it later, before distribution, no harm is done. This law is but an act of limitation, intended to protect the administrator after he has distributed the fund in the *time* and *manner prescribed* by law. When this accountant converted the estate and reduced the assets to her own possession, it was not a distribution according to law: Lewis v. Ewing, 18 Pa. 313."

If the respondent in the settlement of the estate had sold the bank stock prior to the bank's failure, or had complied with the law in filing an account and thereafter properly distributing the funds of the estate, the claim would be disallowed. But, as we have said, there was no legal distribution. Therefore, a risk was assumed that must be discharged.

The assignments of error are overruled, the appeal is dismissed, and the decree of the learned court below is affirmed. Costs to be paid by appellant.