## Powell's Estate

*Robert P. F. Maxwell* and *George F. Blewett*, for exceptants.

*Russell C. Gourley*, contra.

LADNER, J., June 9, 1939.—In this matter the following facts may be summarized from the adjudication: Decedent died July 16, 1936, intestate, and letters of administration were granted the accountants August 17, 1936, which were duly advertised. Without first filing an account, the administrators in November and December 1937 distributed to themselves as next of kin a balance of personal estate in the sum of $894.42. At the instance of the Patterson Building & Loan Association, the holder of decedent's collateral bond, the filing of an account was ordered October 28, 1938, the adjudication of which account is the subject of the exceptions before us.

The auditing judge allowed the claim of the Patterson Building & Loan Association in the sum of $828.77, with interest from January 3, 1938, and surcharged the administrators with the items of distribution to themselves to the extent necessary to pay the claim allowed.

The exceptions before us were filed on behalf of the administrators and the Fidelity & Casualty Company of New York, their surety, and charge the action of the learned auditing judge to be error in three respects:

First: Because section 49(*b*) of the Fiduciaries Act of June 7, 1917, P. L. 447, bars the building association's claim. Section 49(*b*) reads:

"Executors or administrators may make distribution, and pay or deliver legacies, *without the audit of their accounts*, upon such security as may be satisfactory to

them, nevertheless at their own risk, *but without liability to any creditors of the decedent who shall not have given written notice to the executor or administrator within six months after the granting of letters testamentary or of administration*, provided that such executor or administrator has complied with the provisions of section ten [that section requiring the advertising of the grant of letters] of this act." (Italics supplied.)

Judging from several cases before us there seems to be some confusion in the minds of the members of the bar as to the meaning of the words italicized but, when considered in connection wtih the practice generally prevailing in the counties having no separate orphans' court, the purpose of the clause becomes plain. We understand in such counties the practice is for the fiduciaries to file their accounts and unless exceptions are filed they are confirmed as a matter of course, and distribution is then made without an audit. If exceptions or objections are filed, the account is referred to an auditor appointed by the court. Obviously section 49(*b*) is meant to confirm this practice.

Accordingly, in Ivison's Estate, 101 Pa. Superior Ct. 326, 329, Judge Trexler says:

"It will be noticed that section 49*b* allows executors and administrators to make distribution without the audit of their *accounts*, without liability to creditors who have not given written notice within six months. It implies that necessarily an account is filed. It would hardly be a correct construction of this section to hold that when an accountant files his account a creditor even though he has given no notice, may not, before distribution, demand payment. The account, according to the section, must precede the distribution. It does not contemplate that the administratrix, as in this case, should take possession of the estate and use it as her own before any account is filed." See also Glass' Estate, 115 Pa. Superior Ct. 448, and White's Estate, 322 Pa. 85.

There having been no account filed by the accountants here before they distributed the balance of the estate to themselves, it follows they cannot plead this section in bar of an unpaid creditor's claim.

The second question raised is whether the plaintiff's claim, founded as it is on a collateral bond dated September 4, 1925, is barred by the statute of limitations or by laches. The learned auditing judge also correctly disposed of this question. The claim was based on an instrument under seal, to which of course the statute does not apply. While it is true that laches may bar a claim on such instruments even in less than 20 years under certain circumstances as in Piper's Estate, 208 Pa. 636 (White's Estate, 22 D. & C. 26; and Bachman's Estate, no. 1780 of 1937, adjudication filed September 22, 1937); nevertheless here, as pointed out by the learned auditing judge, decedent less than a year before her death signed an agreement with the creditor, dated April 4, 1935, whereby her stock in the building and loan association was cancelled, and its value applied in reduction of the second mortgage to protect which the collateral bond was given. That agreement contains an unequivocal acknowledgment of the debt and a promise to perform the covenants of the bond in the reduced amount. There is, therefore, no merit in the plea of laches.

The third question raised is whether the surety is entitled to exoneration on the theory that the tardiness of the creditor caused the surety to lose a possible recovery against the principals under their contract of indemnity.

The record reveals that this question was not raised before the auditing judge although the latter courteously suggested notice to the surety, who appeared before him by counsel and was heard on the questions before him involving the surcharge. Strictly speaking, therefore, this question is not before us: Anspach's Estate, 16 D. & C. 291.

Furthermore, had this question been raised before the auditing judge he would have had no jurisdiction to de-

termine it, the matter constituting a possible defense which can be raised only in the common pleas courts when and if the surety by refusing to meet the obligations of its bond is subjected to suit for recovery of the award against his principal, the administrator here.

This disposition of the question is made with the approval of the auditing judge, which obviates the necessity of referring the matter back to him.

All exceptions are therefore dismissed and the account is now confirmed absolutely.