Heaney *v.* Riddle, Appellant, et al.

454

Argued December 2, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Lewis H. Van Dusen, Jr.,* with him *J. Horace Church-man, Roland C. Heisler* and *Drinker, Biddle & Reath,* for appellant.

*Symington P. Landreth, Jr.,* with him *Bertram P. Rambo,* of *Rambo, Rambo & Knox,* for appellee.

OPINION BY MR. JUSTICE STERN, January 5, 1942:

In 1916 Henry J. Heaney, plaintiff, gave his bond to Fidelity-Philadelphia Trust Company, Trustee, in the principal sum of $15,000, payable at the expiration of five years, secured by a mortgage on premises 219 Chestnut Street, Philadelphia, of which he was then the owner. In 1919 he conveyed the premises to The Riddle Company, a Pennsylvania corporation, under and subject to the mortgage. In 1928 The Riddle Company filed in the

Court of Common Pleas of Philadelphia County a petition for dissolution, giving notice of the application by advertisement in two Philadelphia newspapers. While those proceedings were pending it conveyed title to the premises to John N. Tracey.[1] No one appearing in opposition, the court granted the prayer of the petition, which was signed on behalf of the company by the president, Samuel D. Riddle, and sworn to by the secretary, Tracey, and contained the statement that "The said The Riddle Company has no debts or liabilities whatsoever." The four directors of the company, Riddle, Tracey, William H. Margerison and A. Ernest Margerison, defendants herein, then distributed the assets of the corporation among themselves as sole stockholders.

Default in payment of the mortgage interest occurred in 1938, whereupon the mortgagee entered judgment on the bond and assessed damages in the sum of $17,011.92, which included a five per cent attorneys' fee of $750. The premises were sold at sheriff's sale for $7,000, of which $5,329.21 was credited on account of the judgment, the difference consisting of payments for back taxes and water rents and the costs of the judgment and execution. Plaintiff being thereupon compelled to pay to the mortgagee in satisfaction of the judgment the sum of $12,059.85, which included certain additional interest and costs, he brought this suit against defendants individually and as liquidating trustees of The Riddle Company to recover that amount with interest. An affidavit of defense containing New Matter was filed. Defendants did not deny therein that the corporate assets they had distributed to themselves were amply sufficient to take care of plaintiff's claim. Plaintiff filed a reply to the New Matter raising questions of law, and also took a rule for judgment for want of a sufficient affidavit of defense. The court sustained plaintiff's reply and made

---

[1] In 1931 Tracey conveyed the premises to defendant Samuel D. Riddle, and the latter, in 1938, without consideration, to one John J. Burns.

the rule absolute. From the judgment entered in favor of plaintiff one of the defendants, Samuel D. Riddle, appeals.

When title to the premises was conveyed by plaintiff to The Riddle Company under and subject to the $15,000 mortgage, the amount of the mortgage debt was presumably part of the consideration for the purchase, and there arose an obligation of The Riddle Company to indemnify plaintiff against loss by reason of the encumbrance; as between plaintiff and the company, the latter made the mortgage debt its own and became primarily liable therefor: *May's Estate*, 218 Pa. 64, 67 A. 120; *Fair Oaks Building & Loan Assn. v. Kahler*, 320 Pa. 245, 251, 181 A. 779, 781. At the same time, therefore, when The Riddle Company dissolved, there was outstanding against it a potential or contingent liability on this obligation of indemnity, and the statement in the petition for dissolution that the company had "no debts or liabilities whatsoever" was not in accord with the fact. While it is true that there could be no recovery against the company unless and until plaintiff sustained an actual loss by payment of the mortgage debt (*Faulkner v. McHenry*, 235 Pa. 298, 83 A. 827; *Fair Oaks Building & Loan Assn. v. Kahler*, 320 Pa. 245, 251, 181 A. 779, 781), nevertheless the corporation could not dissolve and distribute its assets among its stockholders without its liquidating trustees retaining sufficient assets to provide for the corporate debts, including contingent claims and obligations under executory contracts: *Gaskins v. Bonfils*, 79 F. 2d 352; *Bankers Trust Co. v. Hale & Kilburn Corp.*, 84 F. 2d 401; *Pierce v. United States*, 255 U. S. 398, 403. The assets of a dissolved corporation constitute a trust fund for creditors and stockholders (16 Fletcher, Cycl. Corp. 1081, §8217), and when defendants, as liquidating trustees, distributed the assets among themselves as stockholders they made themselves personally liable, by reason of such breach of their trust, to a creditor whose right to priority could not be thus destroyed.

Defendants would have been protected had they followed the statutory law then applicable. The Act of April 9, 1856, P. L. 293, provided the method for dissolving corporations. The petition for that purpose was to be presented to the Court of Common Pleas, which, if satisfied that the prayer might be granted without prejudice to the public welfare or the interests of the corporators, might enter a decree of dissolution. But there was a proviso *"that the accounts of the managers, directors, or trustees of any dissolved company shall be settled in such court and be approved thereby;* and dividends of the effects shall be made among any corporators entitled thereto, as in the case of the accounts of assignees and trustees." If a corporation had no outstanding debts or liabilities there would be no need to file an account, but where claims of creditors existed an account would obviously be necessary so as to afford such creditors the opportunity to prove their claims and establish their right to share in the distribution of the assets; therefore the act provided for the settling in court of the accounts of the directors or trustees and required the approval of the court. Unfortunately, defendants ignored the statute and never filed an account, so that plaintiff was precluded from presenting his claim at an audit and obtaining protective relief against the event which ultimately happened when he was obliged to pay the deficiency due on his bond. Fiduciaries who distribute funds in their hands without an accounting and an audit of their accounts do so at their own risk, and when they assume that risk they must be held responsible for payments made without the approval of the court which turn out to have been improper: *White's Estate,* 322 Pa. 85, 90, 185 A. 589, 591; *Free's Estate,* 327 Pa. 362, 368, 194 A. 492, 495; *Estate of J. Morton Ivison,* 101 Pa. Superior Ct. 326; *Glass' Estate,* 115 Pa. Superior Ct. 448, 452, 175 A. 736, 737.

Defendants seek to excuse themselves for their failure to file an account and for stating that the company

had no debts or liabilities by saying that they were ignorant of plaintiff's claim. While they may not have been advised as to the principle of law which gave rise to an obligation on their part, they were conversant with the facts, because they knew of the existence of the mortgage and of the deed by which they had taken title under and subject to it; at the very time when the dissolution proceedings were pending the company conveyed the property to Tracey under and subject to the mortgage, and it had paid the interest on the mortgage until that time. "Although no actual fraud is alleged here, the result is the same, since the distribution of a corporation's assets, leaving it incapable of discharging its debts, is fraudulent in the eyes of the law": *Bankers Trust Co. v. Hale & Kilburn Corp.*, 84 F. 2d 401, 405. Nor does it come with good grace from defendants to assert that by publishing notice of the petition for dissolution they had done all that was required under the Act of April 4, 1872, P. L. 40, supplementing the Act of 1856, and that plaintiff should have opposed the granting of the petition. While plaintiff had such notice, he was not bound to appear and object to the proposed dissolution; his only interest was to obtain protection of his potential claim, and he had a right to presume that, in accordance with the statutory requirement, defendants would file an account, upon receiving proper notice of which he might appear at the audit and present his claim in accordance with the ordinary practice governing such proceedings. It will be noted that the Act of 1856 provided for the settling of accounts of directors or trustees of a *dissolved* company, thus, apparently, not requiring that the dissolution wait upon the distribution of the assets according to law.[2] In the absence of an accounting by defendants and notice thereof, plaintiff was not in default. Had

---

[2] The Act of 1856 was repealed by the Business Corporation Law of 1933, which now provides for proceedings by the Board of Directors to liquidate the assets and pay the debts of the corporation before a final decree of dissolution is entered.

such an accounting been had, and notice given, the distribution of the corporate assets, under a decree of the court, could then have been lawfully effected without any subsequent liability to plaintiff: *Walbridge's Estate,* 314 Pa. 250, 171 A. 580; *Denny's Estate,* 314 Pa. 566, 172 A. 119; *Timmins' Estate,* 338 Pa. 475, 13 A. 2d 7.

Plaintiff's claim is not barred by the statute of limitations.[3] He had no cause of action and could not maintain a suit until he sustained an actual loss by being obliged to pay the mortgage debt. Such payment was made in 1940, and then only would the statute begin to run in favor of The Riddle Company and its liquidating trustees. A claim arising after the death of an individual or the dissolution of a corporation is not impaired by reason of a prior distribution of the assets of the decedent or corporation if such distribution was not effected in accordance with law: *Robins' Estate,* 180 Pa. 630, 37 A. 121; *Glass' Estate,* 115 Pa. Superior Ct. 448, 175 A. 736; *Bankers Trust Co. v. Hale & Kilburn Corp.,* 84 F. 2d 401, 405.

Upon breach of the implied covenant of indemnity, plaintiff was entitled to recover the amount necessary to restore him to the position in which he would have been if the covenant had been kept; his right was that of complete exoneration from the mortgage debt which The Riddle Company had impliedly agreed to discharge. The liability of the company was co-extensive with the original obligation, and it was chargeable with notice of all the terms of the bond and mortgage as therein disclosed. Those terms included the covenant to pay interest, taxes and water rents, as well as an attorney's fee if it should prove necessary to enter judgment on the bond. Accord-

---

[3] The Act of April 29, 1874, P. L. 73, section 15, refers only to actions against stockholders based on their individual liability for work or labor done to carry on operations of the corporation, and the Act of March 28, 1867, P. L. 48, to claims for material furnished or moneys loaned to a corporation and to acts of negligence on the part of stockholders or directors.

ingly, defendants are liable for those items, and the taxes, water rents and costs were properly deducted from the credit allowed for the sum realized at the sheriff's sale: *Miller v. Griffith,* 268 Pa. 409, 413, 112 A. 52, 53; *Jacobs v. Kupperstein,* 112 Conn. 607, 153 A. 656. The costs of entry of the judgment and execution thereon, as well as the counsel fee, are recoverable also because, as between plaintiff and The Riddle Company, the primary duty to pay the mortgage debt rested upon the latter (*Greenspan v. Margolis,* 70 Pa. Superior Ct. 373, 376), and, as it failed to meet its obligation in that respect, defendants cannot complain that plaintiff—who, in respect to the company, was only secondarily liable—allowed judgment to be entered and a sheriff's sale to be had. The net amount obtained from the sale was in relief of the mortgage debt, and defendants would not be entitled to the gross credit of $7,000 which was allowed them, if they did not concede the deduction therefrom of the costs and expenses without which it could not have been realized.

Judgment affirmed.