663 A.2d 741

**John T. COLEMAN and Catherine E. Coleman, Husband and Wife, Appellees,**

v.

**Phyllis M. COLEMAN, Appellant.**

Superior Court of Pennsylvania.

Submitted April 3, 1995.

Filed Aug. 14, 1995.

198

James P. Coulter, Butler, for appellant.

Jon M. King, Emlenton, for appellees.

Before WIEAND, OLSZEWSKI and HESTER, JJ.

OLSZEWSKI, Judge.

In 1992, John T. Coleman (John) sued his mother Phyllis Coleman (Phyllis) in an effort to force her to make the mortgage payments on his house. Remarkably, the trial court granted John's motion for summary judgment. We reverse.

We have read John and Phyllis Coleman's depositions, and consider them in the light most favorable to Phyllis, against whom summary judgment was granted. The facts underlying this bizarre piece of litigation began in 1978, when John bought a house from his parents, Phyllis and John E. Coleman. John paid $30,000 to his parents for the property, which was worth much more. To finance the purchase, John borrowed the money from the Landmark Savings Association, which secured the loan with a mortgage on the property. R.R. 66a–68a.

John and his second wife Karen lived in the house until 1987, when their impending divorce put too much financial stress on them to continue making the mortgage payments. John asked his parents to take the property back and assume the mortgage, lest the bank foreclose and the property be lost. John's parents agreed, and purchased the property subject to the $28,231 of the loan which was still outstanding. Landmark Savings allowed them to take over the mortgage payments. R.R. 71a.

John's parents moved into the house, and Karen continued to live there for about a year until her divorce from John was finalized. Meanwhile, John took up residence in Phyllis's nearby trailer with his third wife Catherine, and their children. When her husband died in March of 1989, Phyllis decided that she should not live alone in such a large house while her son and family lived in her cramped trailer, so she offered to trade residences. She deeded the house back to

John as a gift—or specifically for one dollar consideration which John never actually paid. R.R. 85a, 107a.

Both parties acknowledged that the outstanding mortgage was never discussed when Phyllis deeded the house back to John, and that Phyllis never promised to continue making the mortgage payments. R.R. 76a, 109a. Phyllis, however, continued to pay the mortgage until she exhausted the proceeds of her late husband's insurance policies. Faced with her own rising medical expenses and a meager income from social security, she decided that John, who was now gainfully employed, should take over the payments on his house. R.R. 126a, 137a.

John made the payments for a while, and then decided to sue his mother to enforce what he claimed was her promise to continue paying the mortgage. The trial court denied Phyllis's preliminary objections, depositions were taken, and both parties moved for summary judgment.

Summary judgment may be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b), 42 Pa.C.S.A. When considering a motion for summary judgment, the trial court must examine the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. We will overturn a trial court's entry of summary judgment only if we find an error of law or clear abuse of discretion. *Lower Lake Dock Co. v. Messinger Bearing Corp.*, 395 Pa.Super. 456, 577 A.2d 631 (1990).

Phyllis's motion was based on the facts in the depositions and well-settled principles of law: she deeded the property to John subject to the existing mortgage; she had never promised to pay the mortgage; there was no writing evidencing her promise to pay the mortgage (which would be required under the statute of frauds); and in any event, John could not

sue to enforce what he acknowledged to be a gift. R.R. 170a–71a. John filed a cross-motion for summary judgment, arguing only that the statute of frauds did not apply because Phyllis had specifically agreed to assume the mortgage debt when John deeded the property to her in 1987, and that this obligation did not transfer back to him when Phyllis deeded the property back in 1989. John's motion did not specify what type or amount of judgment he wanted, other than to refer to his pleadings. R.R. 188a, 196a–205a.

The trial court granted summary judgment for John. The court's short, cryptic opinion is further obscured by the enormous incongruity between what little it says, and the judgment it apparently grants. The opinion and accompanying order simply grant John's motion for summary judgment, without describing what this judgment entails. To understand the legal error which mandates reversal, we must first understand what John sought to accomplish with this action.

John requested summary judgment based upon his pleadings, which asked the trial court "to enter a judgment:

A. Declaring that [Phyllis] has a duty to make all monthly installment payments required by said mortgage and pay any and all sums due and owing thereunder in accordance with the terms and conditions thereof; and

B. Declaring that [Phyllis] shall be required to indemnify and reimburse [John] for any and all monthly installments and payments of any other sums made by [John], heretofore or in the future, under the terms and conditions of said mortgage; and

C. Declaring that [Phyllis] shall be required to reimburse [John] for all [his] costs and legal fees incurred in pursuing the instant declaratory judgment action; and

D. Granting such further relief as the Court may deem appropriate."

Complaint, R.R. 8a–9a. In short, John wanted the Butler County Court of Common Pleas to order his elderly mother to pay his mortgage.

John's theory of the case was that when he transferred the property to his parents in 1987, they assumed the mortgage debt. The record supports this claim. All that means, though, is that Phyllis also became liable on the note which the mortgage secures, along with John.[1] John claims that when Phyllis deeded the property back to him in 1989, she remained personally liable on the mortgage. Thus, John argues that while he owns and lives in the house, his mother is still legally obligated to pay the debt which the mortgage on his house secures.

The problem with John's theory is that even if Phyllis is liable on the debt, what John seeks in his complaint is still utterly uncognizable under our system of law. If, as John argues, Phyllis owes the bank money, then John has no standing to bring any action regarding that debt. Even if he had standing, our courts cannot do what he asks: order a third party to pay an ordinary commercial debt. Such an order would require the exercise of the court's most extraordinary equitable powers. These powers come into play only in a few narrow situations, such as support actions. A court could order a party to pay spousal or child support, and use its equitable powers to jail him if he willfully refused. But debtor-creditor relationships are purely legal. A creditor can sue its debtor in court to obtain a money judgment, and then go to the sheriff to execute the judgment by levying upon the debtor's assets. In our common law tradition, courts do not order and force people to pay commercial debts—we allow creditors to obtain and execute money judgments.

A prudent creditor will often demand a security interest in specific assets of the debtor, to insure that the debt will be paid. That is what the bank did here: it loaned $30,000 to John, and secured the debt with a mortgage on John's house. When John was about to default, he transferred the house to his parents, and they assumed the debt. The bank was happy to oblige: it continued to get regular payments on the debt, it

1. John does not claim, and the record does not reveal, that the bank ever released John from his debt—it simply added John's parents as parties liable on the debt.

still had its security interest in the house, and now it had another pocket to protect against any potential deficiency in the event of foreclosure. When Phyllis deeded John the house in 1989, she could not give him the "full bundle of sticks" that constitute complete rights in a piece of real property, because the bank held one important stick: the right to seize the property and sell it in order to satisfy a debt. The mortgage was recorded, which John certainly knew about, since he granted the mortgage to the bank in 1978 when he borrowed the purchase price. If John did not want to accept the gift of a mortgaged house, he could have refused the deed.

But John accepted what his mother gave him. There can be no question that if Phyllis defaults on the mortgage payments, the bank can foreclose on the property to satisfy the debt. John cannot force Phyllis to pay the debt anymore than the bank can. The kind of judgment that John sought in his complaint is simply not available to him under our law.

John therefore alleges that his mother promised to continue making the mortgage payments, and he is suing to enforce this promise. This theory is also totally unsupportable. First, John specifically admitted during his deposition that his mother never promised to make the mortgage payments. R.R. 76a. Second, there is no contract to enforce. John admits that he made no contract with his mother regarding the mortgage payments: "This action is solely to enforce the terms of a gift from [Phyllis] to Plaintiffs, which all parties concede took place." Appellee's brief at 11 (emphasis added).

A gift requires delivery—the present transfer of the thing given. *In re Estate of Sipe*, 492 Pa. 125, 422 A.2d 826 (1980). Phyllis gave John the property by delivering a deed to him. But Phyllis could not deliver a promise to continue making the mortgage payments. A promise of future performance cannot be the subject of a valid gift. Rather, a contract, supported by consideration or a statement of the parties' intent to be legally bound, is required before one can sue over the breach of a promise of future performance.

Phyllis raised failure of consideration in her preliminary objections. The trial court noted that John's complaint alleged that Phyllis had made a gift of future mortgage payments, and that consideration was not needed for a gift. R.R. 46a. The trial court should have also noted that a promise of future performance cannot be delivered, and one important purpose of requiring present delivery of a gift is to prevent people from suing to enforce gifts, or alleged promises to make gifts in the future. *See, e.g., In re Smith's Estate,* 237 Pa. 115, 85 A. 76 (1912). This case has become confused because the trial court conflated the fundamental concepts of gift and contract at the outset.[2]

Phyllis's cogent preliminary objections should have been sustained, because as a matter of law, John cannot sue to enforce an alleged gift of future mortgage payments. We therefore reverse the trial court, and order that summary judgment be entered for Phyllis Coleman in this action.

Order reversed, and judgment entered for appellant.

WIEAND, J., concurs and dissents.

WIEAND, Judge, concurring and dissenting:

I agree with the majority that the summary judgment entered in favor of the plaintiff-appellees must be reversed.

---

**2.** The dissent opines that the case should be remanded to determine the factual issue of whether Phyllis intended that John indemnify her for any obligation she still had to pay the mortgage debt. Phyllis has not asked us to determine if John owes her anything. Rather, the reverse is true—John asked the trial court to declare that Phyllis had to pay the mortgage and/or reimburse him. Moreover, this question of who is primarily and secondarily liable on the debt would become an issue only if the mortgage went into default, foreclosure, and the bank obtained a deficiency judgment. The record shows that the house is worth about $90,000, roughly three times as much as the outstanding mortgage, so a deficiency judgment hardly looms likely. R.R. 71a, 79a, 102a; *see Boyle v. Com., Dept. of Transp.,* 151 Pa.Cmwlth. 430, 433–35, 617 A.2d 70, 72 (1992) (declaratory judgment is not appropriate to determine rights in anticipation of events that may never occur). And as we have stated, John cannot sue his mother because the house she gave him was worth only about $60,000 in equity, instead of its unencumbered fair market value of about $90,000. John certainly knew about the outstanding mortgage, but accepted the gift anyway.

Instead of entering judgment for the appellant, however, I would remand for further proceedings.

The applicable principles of law were stated by the Supreme Court in *Masgai v. Masgai,* 460 Pa. 453, 333 A.2d 861 (1975), as follows:

> One who by acceptance of a deed assumes and agrees to pay a mortgage to which the property is subject becomes liable both to his grantor and also to the mortgagee as a third party beneficiary. See *Steinert v. Galasso,* 363 Pa. 393, 69 A.2d 841 (1949). If the conveyance is made under and subject to a mortgage but without an express assumption, there is no direct obligation to the mortgagee on the part of the grantee. Act of June 12, 1878, P.L. 205, § 1, 21 P.S. § 655. See *Meco Realty Co. v. Burns,* 414 Pa. 495, 200 A.2d 869 (1964). Rather, the obligation of the grantee is to indemnify the grantor from the mortgage obligation, including any deficiency judgment following foreclosure. See *Heaney v. Riddle,* 343 Pa. 453, 23 A.2d 456 (1942).

*Id.* at 459 n. 5, 333 A.2d at 864 n. 5. See also: *Ruzyc v. Brown,* 320 Pa. 213, 216–218, 181 A. 783, 784–785 (1935); *Faulkner v. McHenry,* 235 Pa. 298, 301, 83 A. 827, 828 (1912); *In re May's Estate,* 218 Pa. 64, 69, 67 A. 120, 121 (1907), *overruled on other grounds by Schuetz's Estate,* 315 Pa. 105, 172 A. 865 (1934).

In reciting this principle of indemnification, however, the Supreme Court has on occasion suggested that it is a presumption which may be rebutted by an agreement to the contrary. Thus, in *Fair Oaks Bldg. & Loan Ass'n v. Kahler,* 320 Pa. 245, 181 A. 779 (1936), the Court said:

> Where a conveyance is made subject to a mortgage, the amount due on the mortgage is presumptively part of the consideration for the purchase: *Orient Building & Loan Association v. Freud,* 298 Pa. 431, 435[, 148 A. 841]. As between the parties to the conveyance this presumption may be overcome by oral or written agreement, but not to the prejudice of others not parties thereto who may be affected thereby. We have held that where a purchaser

comes into possession of property with an existing mortgage thereon, he intends to indemnify the vendor against loss through such mortgage, and that there is thus created a contingent liability: *Dobkin v. Landsberg*, 273 Pa. 174, 180[, 116 A. 814].

*Id.* at 251, 181 A. at 781. See: *Heaney v. Riddle*, 343 Pa. 453, 456, 23 A.2d 456, 458 (1942) ("the amount of the mortgage debt was presumably part of the consideration for the purchase"). And in *Naffah v. Diebold*, 349 Pa. 219, 36 A.2d 782 (1944) (per curiam), the Court said:

> Where land is sold and conveyed under and subject to a mortgage there arises an implied obligation on the part of the vendee to indemnify the vendor against the latter's personal liability for the debt, but this is true only if such obligation constitutes part of the consideration for the conveyance, in which case, the amount of the mortgage lien being deducted from the purchase money, the parties naturally intend that, as between them, the vendor is to be relieved from all liability thereon.... It is clear, therefore, that no implied covenant of indemnity arises unless the obligation to pay the incumbrance constitutes part of the purchase price.

*Id.* at 220–221, 36 A.2d at 783.

In the instant case, when Phyllis and John E. Coleman took title to the home of their son, John T., on August 28, 1987, they expressly agreed to assume and to pay a mortgage thereon held by Landmark Savings Association. In this manner they became liable both to their son, the grantor, and to the mortgagee for payment of the mortgage.

When Phyllis Coleman, the surviving grantee, subsequently reconveyed the real estate to her son on November 9, 1989, the conveyance was made under and subject to the mortgage of Landmark Savings Association. However, the deed did not contain language that the grantee was assuming or agreeing to pay the mortgage. The son argues that the deed of reconveyance was a gift and was made without consideration. Therefore, he concludes, the consideration did not include an

implied agreement to indemnify his mother against the mortgage obligation. The mother's deposition testimony, while conceding that a gift was intended, disclosed an intent that her son should pay the mortgage because she could no longer afford to pay it on her fixed income.

Under these circumstances, there is, in my judgment, an outstanding factual issue to be determined regarding the appellant-mother's donative intent. Did she intend her conveyance to be free and clear of all liability for the existing mortgage or was it the intent of the parties that, consistent with the language of the deed, the grantee son was to indemnify the grantor mother for mortgage payments which she was required to pay by virtue of her prior assumption of the mortgage? So that the trial court may receive evidence on this factual issue, I would remand for further proceedings.