IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lorrie Anderson and             :
Danuta Jackiewicz,             :
           Appellants         :
                                 :    No. 1081 C.D. 2020
            v.                  :
                                 :    Submitted: December 13, 2021
Pleasant Valley Educational     :
Support Professionals'          :
Association and Pleasant Valley   :
School District and Lorraine     :
McCutchan                  :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                     FILED: January 24, 2022

Lorrie Anderson (Anderson) and Danuta Jackiewicz (Jackiewicz) (collectively, Appellants) appeal from the September 11, 2020 order of the Court of Common Pleas of Monroe County (trial court), which granted the motions for summary judgment filed by Pleasant Valley Educational Support Professionals' Association (PVESPA),[1] Pleasant Valley School District (School District), and Lorraine McCutchan (McCutchan) (collectively, Appellees) and dismissed Appellants' complaint. We affirm.

---

[1] PVESPA is an employee organization that represents a specific group of employees employed by the School District.

Appellants are employed by the School District as support staff/secretaries. Appellee McCutchan is also employed with the School District as a support staff/secretary. Appellants and McCutchan are members of PVESPA.

The School District and PVESPA negotiated several collective bargaining agreements (CBA),[2] which include procedures by which PVESPA members can file grievances, including on their own without the representation of PVESPA. The grievance procedures in the CBAs govern how an employee's grievance is heard and decided. Level One requires that an informal conference be held within five days with an immediate supervisor. (Reproduced Record (R.R.) at 29a.) After the informal conference, if there is no resolution, Level Two requires the School District's superintendent to file a written decision within 10 work days after receipt of the grievance. *Id*. Level Three states that if the grievant is not satisfied with the written decision of the Superintendent, the matter shall be referred to the School Board, which shall make a determination within 10 days after receipt of the grievance. *Id*. If the grievance has not been satisfactorily resolved in the foregoing steps, Level Four requires the grievance to be referred to arbitration if it arises out of the interpretation of the CBA. The CBAs also included schedules that set out the salaries of employees. *Id*. at 68a.

In 2008, McCutchan obtained a step-level pay increase.[3] McCutchan's 2008 step-level pay increase resulted from her complaint/grievance, alleging the School District's failures to withdraw union dues from her paycheck, to move her step-

---

[2] The CBAs negotiated between the School District and PVESPA include: the CBA for 2008-09 through 2011-12; the CBA for 2012-13 through 2014-15; and the CBA for 2015 through 2018. The portions of the CBAs that Appellants claim were violated are the pay schedules regarding secretaries.

[3] The term step-level refers to increments by which an employee's salary increases over time. Those increments are set out in steps that appear in schedules in the CBAs.

level up when other less-senior secretaries were given increases, and to put her into an additional position for which she was trained. The School District agreed to move McCutchan up a step-level in pay on account of the issues she presented. Because the School District agreed to move McCutchan up a step-level in pay on account of the issues she presented, McCutchan did not file a grievance or inform PVESPA or her coworkers of her complaint.

In 2015, Anderson learned of McCutchan's 2008 step-level pay increase. This occurred during negotiations as to the CBA for 2015 through 2018 when Anderson, who was involved in the negotiations, was provided salary spreadsheets. According to Anderson, the spreadsheets revealed that McCutchan was a pay level above Anderson. One spreadsheet appears to show McCutchan with a salary several thousand dollars higher than Anderson's salary. Anderson was concerned about the apparent salary difference because she believed she had more seniority than McCutchan. A seniority list stated Anderson's "Seniority Date" was 8/4/1997, and McCutchan's was 7/27/98. *Id.* at 1517a.

### Anderson's Grievance

In 2015, Anderson expressed to Bernadette McHugh, a Uniserv[4] representative with the Pennsylvania State Education Association (PSEA), her desire to file a grievance regarding the issue of McCutchan's 2008 pay dispute resolution. McHugh assisted Anderson in the drafting of the grievance. On July 30, 2015, Anderson filed a grievance regarding the pay difference between herself and McCutchan, asserting that the School District "gave step movement to a single administrative secretary unilaterally in violation of the collective bargaining agreement." *Id.* at 1521a. Anderson asserted that the following CBA articles were

___

[4] Uniserv assists PVESPA in collective bargaining and grievance administration.

3

violated: Article I-Recognition, Article W-Wages and Hours, and Section 5-Secretaries, Appendix A. *Id*. As relief, Anderson requested "[a]ny and all members of the bargaining unit impacted by the step movement violation . . . be provided step movement and any other terms that an arbitrator deems appropriate." *Id*.

Anderson filed her grievance with John Gress, her supervisor in the office where she worked. Because her grievance concerned payroll, Gress advised Anderson to meet with Dr. John Burrus, the School District's Director of Human Resources. However, Anderson never met with Dr. Burrus and Gress prepared a disposition statement on September 3, 2015. Pursuant to the CBA, Anderson's grievance expired 15 days after the letter of disposition prepared by Gress.

Separately, in August of 2015, PVESPA's Executive Board met to discuss Anderson's grievance. Anderson and McCutchan were also in attendance. At the meeting, the PVESPA Executive Board expressed concerns to Anderson regarding her grievance, making it clear that it was skeptical there was a valid basis for the grievance. One concern was that the grievance could have a harmful impact on other PVESPA members. According to the PVESPA Executive Board, the harmful impact could come from the School District re-examining all secretaries' salaries since the grievance sought relief for all secretaries. That could lead to determinations not only to reduce McCutchan's salary but also other secretaries' salaries if the School District determined it did not comply with the salary schedules in the CBAs. It was pointed out to Anderson that such potential reductions posed a risk for her salary as it may not have been set in compliance with the CBA. PVESPA's Executive Board also expressed its concern that Anderson's grievance pitted one PVESPA member against another. *Id*. at 964a-65a, 1054a-56a. The PVESPA Executive Board members viewed this as "unique" and "extremely unusual," and expressed discomfort with a grievance that involved

4

"accusations" by one union member against another. *Id.* Noting that Anderson had admitted that she had always been paid at the amounts set in the CBAs, the PVESPA Executive Board voiced concerns that the Anderson grievance was not seeking to correct any "harm" to Anderson, but simply challenging the step movement given to McCutchan. *Id.* at 957a-59a, 965a. PVESPA's Executive Board concluded that Anderson's grievance did not have any "validity," and as a result, PVESPA did not represent her in the grievance. *Id.* at 978a.

Following this meeting, Anderson had an in-person conversation with PVESPA President, James Serfass, during which Anderson told Serfass she no longer wanted to pursue the grievance and that she had withdrawn it. Serfass sent Anderson a follow-up letter on September 13, 2015, in which Serfass stated that he respectfully accepted Anderson's decision "not to proceed with the grievance." *Id.* at 179a. Anderson never responded to the letter from Serfass.

### McCutchan 2015 Unfair Labor Practices Charge

In the meantime, on September 10, 2015, PVESPA and McCutchan filed an Unfair Labor Practices (ULP) complaint with the Pennsylvania Labor Relations Board, alleging that she was denied a promotion to the position of secretary to the School District's superintendent in retaliation for expressing her opinions on union and labor matters and due to the School District's non-union animus. *Id.* at 1551a-54a.

### Jackiewicz Grievance

On September 30, 2015, Jackiewicz filed a grievance, entitled "Class Action. All PV Secretaries." *Id.* at 1532a. The grievance was signed by Anderson and five other members of the School District's secretarial staff and avers that the School District "gave step movement to certain secretaries, unilaterally, not negotiated by [the School District] and membership, in violation of the collective bargaining agreement."

5

*Id.* The grievance identifies the "Articles Violated" as the following: "Article I-Recognition, Article W-Wages and Hours, [and] Section 5-Secretaries, Appendix A." *Id*. at 1532a. Jackiewicz's grievance also includes averments that there are allegations that the "local union president" threatened that if the grievants proceeded, they "would pay the consequences." *Id*. at 1534a.

Jackiewicz's grievance moved to Step III of the grievance procedure. The "Disposition of Superintendent or Designee" states:

> The [School] District has done an investigation/review of secretary salaries from the 2005/2006 school year to present, including the five (5) individuals specifically listed on the attachment. One individual [McCutchan] appears to have been over paid. *It is the District's intention to seek reimbursement [from McCutchan].*

*Id.* at 1533a (emphasis added).

Consistent with that statement, the School District sent a letter to McCutchan on January 19, 2016, stating the School District's intention to seek reimbursement from her for approximately $10,000 in overpaid salary. *Id*. at 1582a.

**McCutchan 2016 Unfair Labor Practice Complaint**

On February 16, 2016, PVESPA and McCutchan filed another ULP complaint, alleging retaliation by the School District for seeking reimbursement of the increase in step-movement pay she had been receiving since 2008. *Id*. at 1547a-48a.

**Appellants' March 2016 Meeting with PVESPA**

In March 2016, Appellants, together with the other secretaries who signed the Jackiewicz grievance, met with PVESPA's Executive Board and representatives of PSEA. At this meeting, a representative of PSEA, John Holland, advised Jackiewicz that her grievance lacked merit because she and the other grievants had received all of the pay they were due pursuant to the applicable CBA.

6

**February 2017 Settlement of McCutchan's
Unfair Labor Practices Claims**

On February 23, 2017, the School District, McCutchan, and PVESPA entered into a Settlement Agreement that resolved McCutchan's ULP charges. *Id.* at 1536a-41a. At the School District's request, the Settlement Agreement included a specific term that PVESPA "shall withdraw, with prejudice, the Grievance filed on July 30, 2015 (*i.e.*, Anderson's grievance), seeking step movement for administrative secretaries." *Id.* at 1538a. Appellants learned of the ULP Settlement Agreement in March of 2017.

**Procedural History**

On November 9, 2018, Appellants filed the operative complaint, averring that they became aware of a "pay disparity" in that "McCutchan was receiving a higher salary based upon an increase in pay grade, dating back to 2008." (Complaint (Compl.) ¶11.) Appellants allege that McCutchan was given this increase while having less years of service than many other members who were not given the same increase, which is a violation of the CBA. *Id.* ¶¶15, 20. Appellants aver that Anderson and Jackiewicz filed grievances, pointing out the disparity and seeking similar step-up increases. Appellants allege that, despite the School District's indication that it was going to seek reimbursement of the step-up pay increases from McCutchan, neither PVESPA nor the School District have taken any action on the grievance filed by Jackiewicz since 2016. Instead, PVESPA agreed to withdraw the grievances as a condition of settling the ULP charges filed by McCutchan. *Id.* ¶¶37, 39, 51. Appellants assert that they never received notification that their grievances were being withdrawn as part of McCutchan's settlement of her ULP charges, and that the School District agreed to this withdrawal without any involvement of Appellants.

7

Based on these averments, Appellants raise four claims. In Count I, Appellants contend that PVESPA breached its duty of fair representation by failing to pursue arbitration or a resolution of their grievances. They allege that PVESPA took little action on proceeding with the grievances and agreed to withdraw Appellants' grievances as part of the Settlement Agreement with McCutchan, without notification, process, or arbitration. *Id.* ¶¶66-67, 73. Appellants further allege:

> 74. PVESPA unilaterally acted in bad faith and in an arbitrary and discriminatory manner in withdrawing the grievances of September 2017 and November 2017 to provide a benefit to McCutchan while simultaneously eliminating any opportunity for [Appellants] to arbitrate their claims made in those grievances.

> 75. PVESPA has an obligation to fairly represent all of its members and protect their rights, which it did not do in the withdrawal of the grievances of [Appellants], who are members, in an effort to facilitate the settlement with another member who is believed to have been already provided an improper step-up in pay with the full knowledge of [Appellees].

> 76. The facilitation of this settlement with McCutchan was done to the detriment of [Appellants].

*Id.* ¶¶74-76.

In Counts II and IV for Civil Conspiracy, Appellants allege that the School District, PVESPA and McCutchan worked together to the benefit of McCutchan and to the detriment of Appellants. They assert that McCutchan, PVESPA, and the School District conspired to harm the grievance process for Appellants. *Id.* ¶124. In Count III, Appellants seek equitable relief compelling the School District and PVESPA to

8

submit their grievances to arbitration in accordance with the grievance procedures set forth the CBAs. *Id.* ¶106.

After extensive discovery was conducted among the parties, PVESPA and McCutchan moved for summary judgment on April 29, 2020, and the School District moved for summary judgment on the following day.[5] Appellees argued that Appellants failed to come forward with any evidence to show that the grievance process was conducted in bad faith by PVESPA. Appellees asserted that the actions of PVESPA in declining to pursue grievances that sought to strip McCutchan of the benefit of her

---

[5] Rule 1035.2 of the Pennsylvania Rules of Civil Procedure provides the standard to be applied in summary judgment proceedings:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa. R.Civ.P. 1035.2. Summary judgment should be granted "where the pleadings, depositions, and answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material facts and the moving party is entitled to judgment as a matter of law." *Coleman v. Coleman*, 663 A.2d 741, 744 (Pa. Super. 1995). In addition, "where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce specific evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement for the moving party to judgment as a matter of law." *Murphy v. Duquesne University of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001).

dispute resolution or provide that benefit to bargaining unit members who did not suffer any harm fell within the wide range of reasonableness afforded to unions in serving their bargaining unit. They argued that this was especially true because uncontroverted evidence showed that PVESPA took no part in McCutchan's 2008 dispute resolution and that, in the present day, it offered both Appellants general assistance as well as objectively reasonable explanations for why it would not pursue their grievances.

The trial court analyzed the record and found that Appellants failed to adduce specific evidence that PVESPA acted arbitrarily, discriminatorily, or in bad faith in its handling of their proposed grievances. With respect to Anderson's grievance, the trial court concluded:

> A union has broad discretion in whether and how to proceed with an employee's grievance. *Weber* [*v. Potter*, 338 F. Supp. 2d 600, 606 (E.D. Pa. 2004)]. We find that [PVESPA] properly used its discretion here to determine it did not want to pursue the grievance and that the facts do not indicate any bad faith on the part of [PVESPA] regarding Anderson. [PVESPA's] concerns about the potential harm of the grievance on the salary steps of other union members and not wanting to pit members against each other are good faith reasons not to pursue the grievance. [PVESPA] further believed Anderson had not been harmed by McCutchan's salary step as Anderson had fully been compensated pursuant to the applicable CBA.

(Trial ct. op. at 13.)

Regarding Jackiewicz's grievance, the trial court concluded that there was no evidence that PVESPA acted in bad faith by quashing her grievance:

> PVESPA was willing to help Jackiewicz file her grievance and [it] even offered advice as to how to fill out the grievance. Jackiewicz chose not to seek [PVESPA] representation. Although it was never explicitly stated, [PVESPA's] Executive Board likely concluded that

10

Jackiewicz's grievance lacked merit for the same reasons [it] concluded Anderson's grievance lacked merit.

* * *

Given the facts in this case and the broad discretion [PVESPA] had in deciding whether to pursue Jackiewicz's grievance, we find [PVESPA] did not act in bad faith in the Jackiewicz grievance process, or by including the withdrawal of her grievance in McCutchan's ULP settlement.

*Id.* at 13-14.

Finding no evidence of malice on the parts of PVESPA, the School District, or McCutchan, the trial court granted summary judgment on the conspiracy claims, as well as Appellants' equitable claim.

### Issues

On appeal,[6] Appellants raise the following issues:

1. Did the trial court err in granting Appellees' Motions for Summary Judgment by assuming facts which were not in evidence?

2. Did the trial court err in granting the School District's Motion for Summary Judgment as it actively engaged with PVESPA and McCutchan to protect McCutchan while simultaneously attempting to terminate the Anderson and Jackiewicz Grievances?

3. Did the trial court err in granting summary judgment on the equitable claim for arbitration in that bad faith has been demonstrated through the testimony and evidence?

---

[6] This Court's standard of review is *de novo,* and its scope of review is plenary, and the grant of summary judgment may be reversed only if the trial court committed an error of law. *See Garzella v. Borough of Dunmore*, 62 A.3d 486, 493-94 (Pa. Cmwlth. 2013).

11

## Analysis

### 1.

In their first issue, Appellants argue that the trial court erred in basing its decision to grant summary judgment on the erroneous factual conclusion that PVESPA made a determination that the grievances were without merit and had good faith reasons for its decision. Specifically, it is Appellants' position that, contrary to the trial court's conclusion, there was never any finding, determination, or discussion by PVESPA that the Anderson or Jackiewicz grievances lacked merit. Appellants argue that, in fact, PVESPA made no attempt whatsoever to determine whether there was a failure to follow the CBA in raising the pay level of one secretary and not all secretaries. Instead, according to Appellants, PVESPA attempted to talk Anderson out of proceeding with her grievance and threatened her with a possible loss in pay if she did proceed. Regarding the Jackiewicz grievance, Appellants argue that no determination of merit was made by PVESPA, and in fact no action was ever taken on it.[7] They submit that they presented sufficient evidence to establish that PVESPA's treatment of their grievances was not only improper but done with malice.

In Pennsylvania, public employees' right to union representation is governed by the Public Employe Relations Act (Act).[8] Pursuant to section 601 of the Act, the entity certified as the bargaining representative of a group of employees has the exclusive right to negotiate and enforce a CBA. 43 P.S. §1101.601. Because a union has the sole authority to enter such agreements, it has a duty of fair representation

---

[7] Appellants further argue that the trial court erred in assuming that the Jackiewicz grievance was also meant to be included in the McCutchan Settlement Agreement. However, McHugh testified that this was merely an error and that the parties meant to withdraw the Jackiewicz grievance since Anderson had already withdrawn her grievance. (R.R. at 1099a.) This testimony was undisputed, and Appellants have come forward with no evidence to the contrary.

[8] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101-1101.2301.

towards everyone in the bargaining unit in both negotiation and administration of collective bargaining agreements. *Case v. Hazelton Area Education Support Personnel Association*, (PSEA/NEA), 928 A.2d 1154 (Pa. Cmwlth. 2007).

A union breaches the duty of fair representation only if its actions are "arbitrary, discriminatory or in bad faith." *Dorfman v. Pennsylvania Social Services Union - Local 668*, 752 A.2d 933, 936 (Pa. Cmwlth. 2000). Although evidence of discrimination or arbitrariness may support a breach of the duty of fair representation, bad faith is generally required. *See Hughes v. American Federation of State, County and Municipal Employees Council 13*, 629 A.2d 194, 195 (Pa. Cmwlth. 1993) ("A union will be liable for breach of a duty of fair representation only when bad faith on the part of the union is shown.").

Individual bargaining unit members have no absolute right to have their grievances arbitrated. *Ziccardi v. Commonwealth*, 456 A.2d 979, 981 (Pa. 1982). Rather, a union has broad discretion to determine whether to pursue a grievance to arbitration and has no duty to arbitrate every grievance. *See Falsetti v. Local Union No. 2026, United Mine Workers of America*, 161 A.2d 882 (Pa. 1960). A union's decision not to pursue a grievance is never a breach of its duty of fair representation where it does not pursue the grievance because it is satisfied that the grievance lacks merit. *Martino v. Transport Workers' Union of Philadelphia*, 480 A.2d 242, 247 (Pa. 1984). A wide range of reasonableness must be allowed to a bargaining representative in serving the unit it represents, subject always to good faith and honesty of purpose in the exercise of this discretion. *See Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953). A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. *See Air Line Pilots Association,*

13

*International v. O'Neill*, 499 U.S. 65, 78 (1991). Bad faith, for its part, requires a showing that a union either acted in a fraudulent, deceitful, or dishonest manner or with an improper motive. *See Motor Coach Employees v. Lockridge*, 403 U.S. 274, 299 (1971).

To survive summary judgment on a claim for breach of the duty of fair representation, an employee plaintiff must show "specific facts; mere conclusory allegations in the pleadings without supporting factual allegations are not sufficient." *Hughes*, 629 A.2d at 195 (granting summary judgment in favor of union defendant where no specific facts showed bad faith).

Here, Appellants failed to produce specific evidence of any conduct on the part of PVESPA which, when evaluated objectively, could support a finding of arbitrariness, discrimination, or bad faith. The crux of Appellants' argument was that McCutchan and the School District resolved an employment dispute in 2008 by advancing McCutchan one step on the secretaries' salary schedule and that PVESPA declined to pursue and resolve grievances filed in 2015 by Appellants, after they learned about the step up and challenged it. We find the trial court carefully analyzed PVESPA's handling of both grievances through which Appellants purported to challenge their colleague's salary – a grievance filed in July 2015 by Anderson and a nearly identical grievance filed by Jackiewicz in September 2015 – and determined that the actions of PVESPA in response to these grievances simply did not indicate arbitrariness, discrimination, or bad faith.

As for the July 2015 grievance, the trial court found that PVESPA "properly used its discretion here to determine it did not want to pursue the grievance and that the facts do not indicate any bad faith on the part of [PVESPA] regarding Anderson." (Trial ct. op. at 13.) The trial court supported this conclusion with the

uncontested evidence produced in discovery: the Executive Board of PVESPA met and told Anderson of several valid concerns it had about the grievance she had filed; there was no credible way Anderson could have viewed this advice as a threat as she had claimed; and Anderson voluntarily declined to pursue her grievance in September 2015. *Id.*

As for Jackiewicz's grievance, the trial court also found no genuine dispute that PVESPA "did not act in bad faith in the Jackiewicz grievance." *Id*. at 13-14. The trial court additionally noted the undisputed facts that PVESPA "was willing to help Jackiewicz file her grievance" and "even offered advice as to how to fill out the grievance" before making a decision about PVESPA's pursuit of the grievance based on merit. *Id.*

In opposing the motions for summary judgment, it was Appellants' burden to demonstrate that there were genuine issues of fact for trial. However, there was no evidence at all in the record that PVESPA was involved in, or even knew of, the dispute resolution that resulted in McCutchan's 2008 salary-step movement at the time it occurred, and all the evidence (including the depositions of Appellants themselves) shows that PVESPA did not know of it until Anderson raised the issue in 2015. (R.R. at 444a, 549a-50a, 741a, 750a-51a, 761a-62a, 796a.) There was no evidence that McCutchan's salary-step placement was a violation of the CBA or that Appellants' grievances would enforce the terms of the CBA, and all the evidence shows that McCutchan's placement was proper, and that Appellants had always been paid correctly. (R.R. at 441a, 543a-45a, 741a-54a, 1117a.) Finally, all deponents with knowledge were unwavering in their explanation of at least three legitimate concerns that PVESPA had about the merit of Appellants' grievances, which were repeatedly explained to them by PVESPA's Executive Board and others:

15

• The School District's response to the grievances could harm secretaries on many steps of the salary schedule because the School District may reexamine its placement of secretaries on the schedule and raise new issues with where they were placed. (R.R. at 993a, 1046a-51a.)

• To attempt to challenge the salary of another employee would be an improper use of the union's procedures and resources and would pit the financial interests of bargaining-unit members against each other. (R.R. at 964a-65a, 1054a-56a.)

• The grievants did not actually experience any harm resulting from another employee's salary placement which a grievance could redress. (R.R. at 957a-59a.)

To avoid summary judgment, Appellants had a burden of adducing sufficient evidence that PVESPA acted in bad faith such that a jury could return a verdict in their favor. *See Ertel v. Patriot News Co.*, 674 A.2d 1038 (Pa. 1996). Appellants failed to do so. Accordingly, the decision of the trial court in granting summary judgment on this claim is affirmed.

**2.**

Next, Appellants argue that the trial court erred in granting summary judgment on their conspiracy claims because the facts and evidence supported that Appellees conspired to wrongfully terminate Appellants' grievances.

To state a cause of action for civil conspiracy, a plaintiff must show "that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice, *i.e.*, an intent to injure, is essential in proof of a conspiracy." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979) (citations omitted). Thus, to withstand summary judgment on this claim, Appellants must have produced evidence which would establish that Appellees

16

acted in concert to commit an unlawful act or do a lawful act by unlawful means, and that they acted with malice. Conclusory allegations of conspiracy are not sufficient to permit an action for damages for a public employer's breach of a labor contract. *Garzella*, 62 A.3d at 494-95. Evidence that the employer and union took the same position in responding to a request is also insufficient, without more, to satisfy the employee's burden to show active participation, conspiracy, or collusion. *Runski v. American Federation of State, County and Municipal Employees, Local 2500*, 598 A.2d 347, 350, 351 (Pa. Cmwlth. 1991) (dismissing action where employee's only evidence of collusion was that both union and employer had refused his requests for copy of collective bargaining agreement). Further, when a predicate claim has failed, conspiracy claims fail as a matter of law. *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. 2008).

Here, Appellants' conspiracy claim fails because we have held that there was no breach of the duty of fair representation. Thus, there can be no cognizable conspiracy to breach that duty among the PVESPA, the School District, and McCutchan. *Phillips*. Because we affirm the trial court's grant of summary judgment on the duty of fair representation claim, that affirmance ends the inquiry.

**3.**

In their last issue, Appellants argue that the trial court erred in dismissing their equitable claim for relief compelling arbitration. Despite being enumerated in the complaint as a cause of action, it is actually a request for certain relief had they succeeded in their claim for breach of the duty of fair representation. *See Martino*, 480 A.2d at 252 (establishing general rule that the only relief available to a plaintiff in a breach of the duty of fair representation claim is equitable relief in the form of an order compelling arbitration). Here, the trial court found that arbitration was not an

17

appropriate remedy where no bad faith on the part of PVESPA had been shown.  We discern no error.

## Conclusion

For the reasons stated above, Appellants failed to adduce any evidence before the trial court to bring their duty of fair representation claim to trial, and the trial court properly granted summary judgment.  Their claims for conspiracy accordingly fail as a matter of law.  Appellants' equitable claim below was also correctly dismissed.  The order of the trial court is affirmed.

_____

PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lorrie Anderson and               :
Danuta Jackiewicz,               :
          Appellants           :
                          :   No. 1081 C.D. 2020
          v.                   :
                          :
Pleasant Valley Educational       :
Support Professionals'           :
Association and Pleasant Valley   :
School District and Lorraine     :
McCutchan                   :

## ***ORDER***

      AND NOW, this 24th day of January, 2022, the September 11, 2020 order of the Court of Common Pleas of Monroe County is hereby AFFIRMED.

 

_____
PATRICIA A. McCULLOUGH, Judge