J-S09043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JONERIK M. KRAMER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CLEARCREEK SIDING | : | No. 1269 EDA 2023 |

Appeal from the Judgment Entered November 3, 2023
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  CV-2019-005880

BEFORE:  PANELLA, P.J.E., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.:                          **FILED JUNE 21, 2024**

JonErik M. Kramer ("Kramer") appeals from the judgment entered in the Delaware County Court of Common pleas in favor of ClearCreek Siding ("ClearCreek").[1]  On appeal, Kramer argues that the trial court erred in determining that he is not entitled to judgment notwithstanding the verdict or a new trial, in excluding evidence of consequential damages, and in denying Kramer's motion in limine to exclude hearsay testimony by ClearCreek's Chief Executive Officer.  Because we conclude that Kramer's claims lack merit or are waived, we affirm.

The trial court summarized the factual and procedural history of this case as follows:

_____

[1] ClearCreek sells and installs concrete siding for, inter alia, homes and commercial buildings.

[Kramer] testified that he discovered [ClearCreek] online. N.T., 4/17/2023, at 75. Sometime in 2015, he reached out to them to inquire about their product. *Id.* He explained that he was intrigued by the product, which had the appearance of a log but consisted of a foam core with a concrete layer around it. *Id.* at 74-75. [Kramer] testified that he wanted to use the material for his own home. *Id.* Sometime in 2016[, Kramer] reached out to [ClearCreek] to obtain the necessary materials for his project. He testified that the first quote from [ClearCreek] was provided in 2016, which he did not accept. *Id.* at 108; *see also* Exhibit D-6. Following further discussions, [ClearCreek] provided a second [quote] to [Kramer] on or about September 17, 2017. N.T., 4/17/2023, at 109; *see also* Exhibit D-7. [Kramer] did not purchase material from [ClearCreek] following that quote[.] N.T., 4/17/2023, at 110. Another quote was provided on April 18, 2018[,] which [Kramer] ultimately accepted. *Id.* at 111-12.

The evidence at trial established that the quotes provided by [ClearCreek] set forth that no siding would be provided for the basement of [Kramer]'s home. *Id.* at 112-13. [Kramer] negotiated and was given a 10% "referral discount" on his order. *Id.* Following receipt of the quote in April of 2018, [Kramer] made a deposit with [ClearCreek]. *Id.* at 113. [Kramer] understood that after the deposit was made, [ClearCreek] still needed additional information in order to finalize his order. *Id.* at 114.

Discussions between the parties continued in the months that followed. N.T., 4/18/2023, at 119. These discussions included requests from [Kramer] for additional material. *Id.* Based upon additional information provided from [Kramer], [ClearCreek] provided another quote in July. [*Id.*] This quote included additional materials for [Kramer]'s basement, and therefore cost more than the quote that had been provided to and accepted by [Kramer] in April. *Id.* at 120-22. Discussions continued, and on September 11, 2018, [ClearCreek] provided another quote, which included less material and cost less than the quote provided in July. *Id.* at 123-24. Upon receipt of this quote, [Kramer] asked [ClearCreek] for a breakdown of the prices of each special[]order item in the proposal. *Id.* at 128. [ClearCreek] provided this information in an email the following day. *Id.* at [47, 129-30]. [ClearCreek] conveyed that the order would be promptly packed and prepared for shipment upon confirmation from [Kramer] and inquired about shipping arrangements. *Id.* at 47.

[Kramer] responded that same day via email stating that he did not want the order and requested a reduction in price. *Id.* at 49-50. According to [ClearCreek], [Kramer]'s rejection of the items and demand for a reduced price "was certainly a big deal in our company." *Id.* at 50. [ClearCreek] testified that at that stage of the process, the company had already produced all the custom parts for [Kramer] in good faith after he had agreed to pay for them. *Id.* [ClearCreek] explained that the parts, since they were custom, were of no use to anyone else, so the company was forced to agree to [Kramer]'s demand and accept payment for the lower amount. *Id.* This was communicated via email on that same day, September 12, 2018. *Id.* at 51; *see also* Exhibit D-26. [Kramer] declined this offer. *Id.* at 52.

[ClearCreek] sent another email to [Kramer] on September 14, 2018[,] which set forth the following:

JonErik,

Thank you for your email yesterday.

In order to resolve this, and put it behind us, we agree to accept a final payment in the amount of $14,760, with the understanding that you will arrange freight, and make your final payment no later than end of day today, so that we can get your order ready for pick-up.

As I mentioned earlier, we will need 48 hours (business hours) until product will be packed and is ready for pick up.

Let me know if you have any questions.

Thanks!

Lorissa Cross

*See* Exhibit D-28.

[Kramer] made a final payment[,] and on or about September 19, 2018[, Kramer] received his order from [ClearCreek]. When [Kramer] contacted [ClearCreek] claiming that he was owed more

- 3 -

materials than he received, [ClearCreek] explained that he was sent the materials that were listed in the breakdown provided with his updated quote. [N.T., 4/18/2023, at] 63-65. [Specifically, Kramer argued that ClearCreek was to ship him 173 pieces of log siding when it only sent him 162 pieces.] [ClearCreek] further explained that they did not currently have any additional siding available and advised that if [Kramer] needed more material, he could order additional pieces. *Id.*; *see also* Exhibit D-33. [ClearCreek] further explained "the quote did not include 11 pieces and the total that you paid on that quote did not include the 11 pieces. If it turns out that you need those pieces, we'd be happy to send them (upon payment). Please let me know at your convenience the accessory count and I can get you an invoice." *Id.* at 66; *see also* Exhibit D-34.

[Kramer] remained in contact with [ClearCreek] and requested and was provided additional supplemental materials from [ClearCreek] free of charge. On or about December 7, 2018, [Kramer] informed [ClearCreek] that certain items in that order were damaged in transit and had been refused. N.T., 4/17/2023, at 82; N.T., 4/18/2023, at 70. [ClearCreek] agreed to remake and reship replacement items and, at [Kramer]'s request, also included additional items requested by [Kramer] free of charge. N.T., 4/18/2023, at 71. [Kramer] again requested additional materials, and an invoice for $1266 was sent to him on January 30, 2019. *Id.* at 74. [Kramer] did not remit payment for these items, however, so the additional items were not shipped. *Id.*

Trial Court Opinion, 8/11/2023, at 1-4 (footnotes omitted, citations modified).

On October 17, 2019, Kramer filed a complaint against ClearCreek raising a claim of breach of contract.

On April 18, 2023, following a two-day trial, a jury rendered a verdict in favor of [ClearCreek, finding that ClearCreek did not breach its contract with Kramer]. [Kramer] filed a [m]otion for [p]ost-[t]rial relief on May 1, 2023[,] in which he made a [m]otion for a [n]ew [t]rial and a [m]otion for [j]udgment [n]otwithstanding the [v]erdict. As it was not filed within 10 days, [Kramer's] motion was untimely. Nonetheless, [ClearCreek] filed an answer on May 2, 2023, and on May 5, 2023, following a review of same, this court denied the [m]otion for [p]ost-[t]rial relief.

***Id.*** at 4-5.

On May 18, 2023, Kramer filed a notice of appeal.[2]  Both the trial court and Kramer have complied with Pennsylvania Rule of Appellate Procedure 1925.  Kramer presents the following issues for review:

> [1.] Is [the t]rial [c]ourt's [o]rder docketed May 5, 2023 denying [Kramer]'s [m]otion for [p]ost-t]rial [r]elief reviewable on appeal?
>
> [2.] Did [the t]rial [c]ourt commit [e]rrors of law and or abuse its discretion, by excluding evidence of consequential damages?
>
> [3.] Did [the t]rial [c]ourt abuse its discretion and commit an error of law, by [d]enying [Kramer]'s [m]otion [i]n [l]imine to [p]reclude [ClearCreek's] Kevin Cross from [p]resenting HEARSAY [t]estimony and evidence at trial?
>
> [4.] Did [the j]ury [err] entering [its] verdict for [ClearCreek] and against [Kramer]?
>
> [5.] Did [the t]rial [c]ourt [o]rder signed May 3, 2023, [err] in denying [Kramer's] [m]otion for [p]ost-t]rial [r]elief, and did it commit errors of law by finding "[Kramer] was not entitled to [j]udgment [n]otwithstanding the [v]erdict or a [n]ew [t]rial", as set forth in [the t]rial [c]ourt[']s [o]pinion?
>
> [6.] Did [the t]rial [c]ourt commit [e]rrors of law and or abuse its discretion, as its [o]pinion makes many incorrect statements in its support of [ClearCreek] and against [Kramer]?

_____

[2]  Kramer initially appealed from the order denying his motion for post-trial relief following entry of the verdict.  ***See*** Notice of Appeal, 5/31/2023.  Because the trial court had not entered judgment, this Court issued a show-cause order directing Kramer to praecipe for the entry of judgment.  ***See Melani v. Northwest Eng'g, Inc.***, 909 A.2d 404, 405 (Pa. Super 2006) (explaining that the entry of judgment is a prerequisite to this Court's exercise of jurisdiction).  Kramer timely complied and this Court discharged the show-cause order.  ***See Morgan v. Millstone Res. Ltd.***, 267 A.3d 1235, 1238 n.1 (Pa. Super. 2021) (noting that jurisdiction may be perfected after filing of appeal and upon docketing of final judgment).

[7.] Did [the trial court] abuse [its] discretion and commit an error of law by leading and suggesting to [ClearCreek]'s [c]ounsel what to ask [Kramer] during cross-examination, and by making untrue statements about the case, that severely [p]rejudice[d] [Kramer]?

Kramer's Brief at 15-16.[3]

For his first issue, Kramer argues that, despite the trial court's contrary statement in its 1925(a) opinion, he timely filed his post-trial motions. **See** Kramer's Brief at 81-83. Thus, he asserts that he preserved all the issues he raised in his post-trial motions for appellate review. **See id.**

"Pennsylvania Rule of Civil Procedure 227.1(c) requires the filing of post-trial motions within ten days after (1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or (2) notice of nonsuit or the filing of the decision in the case of a trial without jury." **Agostinelli v. Edwards**, 98 A.3d 695, 700 (Pa. Super. 2014) (quoting Pa.R.C.P. 227.1(c)). Rule 227.1(b)(2) further provides that "post-trial relief may not be granted unless the grounds therefor … are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds." **Id.** (quoting Pa.R.Civ.P. 227.1(b)(2)).

_____

[3] We note that we have reordered the issues Kramer presents for ease of review.

In this case, the trial court read the verdict in open court before the parties on April 18, 2023. N.T., 4/18/2023, at 158. Consequently, Kramer had to file his post-trial motions within ten days, or no later than April 28, 2023. Kramer, however, did not file his post-trial motions until May 1, 2023. Thus, Kramer's post-trial motions were untimely. **See Agostinelli**, 98 A.3d at 700.

Regarding untimely post-trial motions, we have stated that "[i]n situations in which a party files post-trial motions out of time and a specific objection is made thereto by the opposing party, the trial court, in deciding whether to rule upon the merits of the motion, must consider the nature of the derelict party's default as well as the resulting prejudice to the objecting party." **Carlos R. Leffler, Inc. v. Hutter**, 696 A.2d 157, 166 (Pa. Super. 1997). "If objections are lodged, … the trial court may still, in its discretion, elect to entertain the motion or dismiss the motion, but must first consider whether the objecting party would be prejudiced by the court's ruling." **Id.**

Here, the record reveals that ClearCreek objected to the untimeliness of Kramer's post-trial motions. **See** Memorandum of Law in Support of ClearCreek's Response to Motion for Post-Trial Relief, 5/2/2023, ¶ 1. Nonetheless, ClearCreek did not state how it was prejudiced by the untimely nature of Kramer's post-trial motions. **See id.** In its order denying Kramer's post-trial motions, the trial court is silent as to timeliness. **See** Trial Court Order, 5/5/2023. And although the trial court acknowledged the untimeliness

- 7 -

of Kramer's post-trial motions in its Rule 1925(a) opinion, it nonetheless addressed the merits of the issues Kramer raised. Trial Court Opinion, 8/11/2023, at 5-10.

Based on the foregoing, we decline to find that Kramer has failed to preserve any issues for review because his post-trial motions were untimely. Kramer filed the post-trial motions only one business day late, there is nothing in the record that indicates ClearCreek was prejudiced by the late filing, and the trial court addressed the issues Kramer raised in its Rule 1925(a) opinion. This determination aligns with our long-standing policy that we should liberally construe our Rules of Civil Procedure to effectuate their intent—the timely and fair adjudication of disputes. *See Hutter*, 696 A.2d at 166; *see also* Pa.R.Civ.P. 126(a).[4]

For his second issue, Kramer argues that the trial court erred in granting ClearCreek's motion in limine, which precluded him from presenting evidence of consequential damages—namely, evidence of fines and citations from Newtown Township (the municipality in which the property at issue is situated). Kramer's Brief at 61-65. Newtown Township cited Kramer for not having siding installed on his home. *Id.* at 46. Kramer baldly asserts that his

---

[4] We note that to the extent Kramer argues that the order denying his post-trial motions was a final, appealable order, he is incorrect. *See supra*, note 1. As we previously discussed, however, Kramer took the steps necessary to perfect his appeal in this case. *See id.*

inability to present evidence of consequential damages was prejudicial to his case. *See id.*

We review a trial court's evidentiary rulings for an abuse of discretion. *Brady v. Urbas*, 111 A.3d 1155, 1161 (Pa. 2015). "An abuse of discretion occurs where the trial court reaches a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias, or ill will." *Id.* (quotation marks and citation omitted). "To the degree the issue of whether the law has been misapplied involves a purely legal question, it is reviewed de novo." *Id.*

"Consequential damages are generally understood to be other damages which naturally and proximately flow from the breach of [a] contract." *Cresci Constr. Servs., Inc. v. Martin*, 64 A.3d 254, 264 n.15 (Pa. Super. 2013) (quotation marks and citations omitted). "[C]onsequential damages[,] to be recoverable[,] must have been reasonably foreseeable at the time the contract was made." *Frank B. Bozzo, Inc. v. Elec. Weld Div. of Fort Pitt Bridge Div. of Spang Indus., Inc.*, 423 A.2d 702 (Pa. Super. 1980), *aff'd*, 435 A.2d 176 (Pa. 1981).

The trial court determined that the evidence relating to the fines and citations that Kramer received predated any contract that existed between Kramer and ClearCreek. Trial Court Opinion, 8/11/2023, at 9. This is supported by ClearCreek's motion in limine, which contains public docketing statements showing that the fines Kramer received from Newtown Township

occurred prior to April 2018. *See* ClearCreek's Motion in Limine to Preclude Testimony or Documentary Evidence of Consequential Damages, 3/21/2023, ¶ 11, Exhibit C. The earliest Kramer claims that a contract existed between himself and ClearCreek was April 16, 2018. *See* Kramer's Response in Opposition to ClearCreek's Motion in Limine, 3/27/2023, ¶ II(1). Tellingly, Kramer does not rebut the trial court's conclusion that the fines and citations from Newtown Township predated his contract with ClearCreek. *See* Kramer's Brief at 61-65. Instead, the record reflects that in his response to ClearCreek's motion in limine, Kramer baldly alleged, without explanation, that the dates of the citations and fines had no relevance to his case. Kramer's Response in Opposition to ClearCreek's Motion in Limine, 3/27/2023, ¶ II(11) ).

Additionally, Kramer cites no authority, other than Pennsylvania Rule of Evidence 403,[5] in support of his argument that the trial court should have permitted evidence of the fines and citations at issue. *See* Kramer's Brief at 61-65. We are unpersuaded by Kramer's reliance on Rule 403, as it does not in any way support his claim that the evidence of the fines and citations were admissible in this case. Because Kramer has failed to make any argument, or otherwise demonstrate that the evidence of consequential damages he sought to present naturally flowed from the alleged breach of contract, we conclude

---

[5] Rule 403 states that "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

that the trial court did not abuse its discretion in precluding this testimony. *See Cresci*, 64 A.3d at 264 n.15.

For his third issue, Kramer argues that the trial court abused its discretion in denying his motion in limine to preclude Kevin Cross ("Cross"), ClearCreek's Chief Executive Officer, from testifying at trial. Kramer's Brief at 83-88. Citing Pennsylvania Rule of Evidence 602, Kramer makes bald assertions that Cross could not possibly possess firsthand information on this case because he never spoke directly with Kramer, and that therefore, "[a]ny and all testimony by [Cross] is beyond [h]ighly [p]rejudicial, is not only an abuse of [c]ourts [sic] discretion and an error of law, but is also a travesty of justice for all." *Id.* at 87-88.

Pennsylvania Rule of Evidence 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Pa.R.E. 602.

The record reflects that at trial, Cross testified that he was "very familiar" with the substance of Kramer's order and interactions Kramer had with his company. N.T., 4/18/2023, at 13. Cross explained that he kept himself abreast of the ongoing issues with Kramer's order by meeting with his staff and reading email communications between Kramer and his employees. *Id.* at 15. Additionally, Cross further testified that he was heavily involved in

the quotes ClearCreek provided to Kramer because the company's estimator worked right outside his office. *Id.* at 18. Cross explained that "she and I discussed the process when it occurred, as it occurred. And we provided a number of different quotes. I do review each quote, and I do sign off on each quote." *Id.*

Based on the foregoing, the record reveals that ClearCreek presented evidence sufficient to support a finding that Cross had personal knowledge of his company's communications and dealings with Kramer. *See* Pa.R.E. 602. We therefore conclude that the trial court did not abuse its discretion in denying Kramer's motion to preclude Cross' testimony.

Next, we address Kramer's fourth, fifth, and sixth issues together, as they are related. In issues four and five, Kramer argues that the jury wrongly entered a verdict in favor of ClearCreek and that the trial court erred in determining that Kramer was not entitled to judgment notwithstanding the verdict. Kramer's Brief at 47-65. In issue six, Kramer purports to challenge several of the statements and legal conclusions the trial court made in its Rule 1925(a) opinion concerning the verdict. Kramer's Brief at 65-81. Kramer's sixth issue largely regurgitates his arguments relating to the jury's verdict, his claim that he was entitled to judgment notwithstanding the verdict, and that the trial court erred in precluding him from presenting evidence of consequential damages. *See id.*

At no point in his recitation of any of these arguments does Kramer cite a single authority in support of his claims—he does not even cite the legal standards for weight of the evidence claims or judgment notwithstanding the verdict claims. **See** Kramer's Brief at 47-81. The entirety of his briefing of these claims amounts to nothing more than bald assertions of trial court error and unsupported contentions that the jury improperly weighed the evidence. **See id.** Kramer also fails to offer any legal analysis, explanation, or argument as to how the trial court erred with respect to any of these issues. **See id.**

"The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." **Giant Food Stores, LLC v. THF Silver Spring Dev., L.P.**, 959 A.2d 438, 444 (Pa. Super. 2008) (quotation marks and citation omitted); **see also** Pa.R.A.P. 2119(a). We have repeatedly stated that "[t]his Court will not consider the merits of an argument which fails to cite relevant case or statutory authority." **In re Estate of Whitley**, 50 A.3d 203, 209 (Pa. Super. 2012) (quotation marks and citation omitted). The failure to include citations to relevant authority constitutes waiver of the issue on appeal, as it is not the role of this Court to develop an appellant's argument where the brief provides mere cursory legal discussion. **Lechowicz v. Moser**, 164 A.3d 1271, 1276 (Pa. Super. 2017).

Because Kramer has failed to properly develop issues four through six in a manner allowing for meaningful appellate review, we find these claims

waived.  **See Lechowicz**, 164 A.3d at 1276; **In re Estate of Whitley**, 50 A.3d at 209.

For his final issue, Kramer argues that the trial court erred in telling ClearCreek's counsel what questions he should ask Kramer on cross-examination.  Kramer's Brief at 89-91.  Kramer, however, has failed to preserve this claim for review, as he did not include it in his post-trial motions or his 1925(b) statement.  It is well settled that "issues not raised in post-trial motions are waived."  **D.L. Forrey & Assocs., Inc. v. Fuel City Truck Stop, Inc.**, 71 A.3d 915, 919 (Pa. Super. 2013).  Similarly, "any issue not raised in an appellant's Rule 1925(b) statement will be deemed waived for purposes of appellate review."  **Hess v. Fox Rothschild, LLP**, 925 A.2d 798, 803 (Pa. Super. 2007).  Accordingly, Kramer has waived his final issue on appeal.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/21/2024

- 14 -